IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Paula Horstman,                    :

          Plaintiff,               :

     v.                            :     Case No. 2:07-cv-1117

Michael J. Astrue,                 :     JUDGE HOLSCHUH
Commissioner of Social Security,         MAGISTRATE JUDGE KEMP
                                   :
          Defendant.

## REPORT AND RECOMMENDATION

### I.  INTRODUCTION

     Plaintiff, Paula Horstman, filed this action seeking review
of a final decision of the Commissioner of Social Security
("Commissioner") denying her application for disability insurance
benefits. That application, which was filed on April 18, 2002,
alleged that plaintiff became disabled on December 27, 2001, as a
result of fibromyalgia, chronic fatigue, sleep disorder, restless
leg syndrome, chronic pain, inability to concentrate and
depression.

     After initial administrative denials of her claim, plaintiff
was afforded a hearing before an Administrative Law Judge on
November 9, 2004.  In a decision dated January 25, 2005, the
Administrative Law Judge denied benefits.  That decision became
the final decision of the Commissioner when the Appeals Council
denied review on April 12, 2006.

     After being given an extension of time to do so, plaintiff
thereafter timely commenced this civil action.  The record of
administrative proceedings was filed in this Court on December
21, 2007.  Plaintiff filed her statement of errors on January 21,
2008.  The Commissioner filed a response to the statement of
errors on April 23, 2008.  No reply brief has been filed, and the

matter is now ripe for decision.

## II.  PLAINTIFF'S TESTIMONY

Plaintiff's testimony at the administrative hearing revealed the following.  At the hearing, Plaintiff testified that she lived in a two-story home with her husband and 19 year old child. (Tr. 358).  She is five feet, three inches tall, and weighs 169 pounds, after a weight gain she attributed to adrenal failure. She is depressed about her physical condition but has no crying spells.  She worked at Sears for 24 years, her last job being an operations manager. (Tr. 362).  She stated that she drove about once a week. *Id.*  Plaintiff testified that she stopped working in December 2001 because she kept getting sick and tried to go back and it was unsuccessful. "I just couldn't do it anymore." (Tr. 365).

Plaintiff testified that she can no longer work due to lupus, adrenal failure, stress, hypoglycemia, and fibromyalgia. (Tr. 366).  Since 2000, she has had suicidal thoughts but no attempts. (Tr. 368).  She has muscle and joint pain throughout her body. (Tr. 369).  Her doctors are trying to wean her off medication "to see what would happen." (Tr. 370).  She was taking Ultram but now is taking Advil. *Id.*

Plaintiff was able to tend to her personal grooming without assistance. (Tr. 372).  She testified that she was able to do laundry, load the dishwasher, make beds, cook, and do really light housework, but rested when necessary. *Id.*  She went grocery shopping with her mother, who had to help load the groceries sometimes. (Tr. 375).

## III.  THE MEDICAL EVIDENCE

Pertinent medical records reveal the following.  Prior to filing for disability benefits, Plaintiff had been diagnosed with pancreatic divisum. (Tr. 153).

Plaintiff was treated for various conditions by Dr. Luft, a primary care physician, from November 2000 to April 2002. (Tr. 134-90. A February 2001 treatment note revealed well controlled hypertension. Plaintiff's pain from pancreatic divisum was reportedly almost completely resolved with pancreatic enzymes and her depression was well controlled with Zoloft. (Tr. 151). A June 2001 thoracic spine and rib x-ray results were normal. (Tr. 145). A chest x-ray taken that same day were also normal. (Tr. 170). In April 2001 Dr. Luft indicated that Plaintiff's symptoms were consistent with fibromyalgia, not lupus. (Tr. 148).

Plaintiff first saw Dr. Hackshaw, a rheumatologist, in December 2001. He indicated that Plaintiff displayed eighteen of eighteen tender point sites consistent with fibromyalgia. He also noted that plaintiff experienced restless leg syndrome, and burning pain in the lower and upper extremities. A review of systems specific for lupus type symptomatology was entirely negative. (Tr. 227-28). On January 3, 2002, Dr. Hackshaw indicated that plaintiff could only occasionally lift up to ten pounds, sit for two hours in an eight hour day, stand for two hours in an eight-hour day, and walk for one hour in an eight-hour day. (Tr. 231-32).

On May 8, 2002, Plaintiff returned to Dr. Hackshaw for re-evaluation. (Tr. 225-26). She presented with signs and symptoms consistent with fibromyalgia. She also reported that she had restless leg syndrome on occasion and sleep disturbance. Dr. Hackshaw indicated that plaintiff was unable to function in her previous capacity as an operations manager at a retail store. Later that month, Dr. Hackshaw opined that plaintiff could only occasionally lift up to ten pounds, sit for two hours in an eight-hour day, stand for two hours in an eight-hour day, and walk for one-hour in an eight hour day, and that she experienced

additional functional limitations. (Tr. 229).

Dr. Smith, a psychologist, evaluated plaintiff on August 19, 2002. Dr. Smith noted no history of psychological or psychiatric treatment or hospitalization. Plaintiff described a great relationship with her husband and reported that she performs household chores, cooks, occasionally crochets or sews, performs stretching exercises, socializes weekly, drives a car twice a week, bathes and changes clothes daily, and takes naps during the day. She had a normal gait. Her mood and affect were normal. She exhibited signs of psychomotor retardation and motoric or autonomic signs of anxiety, but she was oriented, flowing, relevant, goal directed, and coherent. There was no evidence of psychosis. She denied fears, phobias, obsessions, posttraumatic revivification experiences, or repetitive nightmares. She exhibited a normal fund of knowledge, but her memory was somewhat impaired. Dr. Smith concluded that plaintiff could perform simple, moderate, and low complex tasks with only mildly limited ability to relate to others or respond to work stress. (Tr. 191-98).

In August 2002, Dr. Gaffey, a state agency reviewer, evaluated plaintiff's mental capabilities. Dr. Gaffey concluded that Plaintiff's mental symptomatology was not severe, causing only mild limitations to activities of daily living, social functioning, and concentration, persistence or pace. There was no evidence of extended episodes of decompensation. (Tr. 208-22). Dr. Branson affirmed Dr. Gaffey's assessment in February, 2003. (Tr. 209).

In September 2002 Dr. Das, a state agency reviewer, evaluated plaintiff's physical capabilities. Dr. Das concluded that plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about six hours in a workday; sit for about six hours in a workday; push and pull

within normal limits; balance, stoop, kneel, crouch, crawl, and
climb within normal limits; and manipulate with her hands and
fingers within normal limits. Dr. Das did not specify any
visual, communicative or environmental limitations. (Tr. 199-
207).

In January, 2003, plaintiff described a tremor that appeared
to be almost a resting tremor. Dr. Hackshaw thought it might be
related to her thyroid medication. Plaintiff also complained of
tingling in her hands and numbness in her left leg, occasionally
on the right. She was also suffering from depression and had
been off her medication. Dr. Hackshaw noted that perhaps the
lack of an SSRI or antidepressant might be the reason for her
depression. Physical examination revealed no extremity synovitis,
good joint range of motion, and normal muscle strength. Dr.
Hackshaw noted that plaintiff displayed tender points in eighteen
of eighteen tender point sites consistent with fibromyalgia. (Tr.
224). Dr. Hackshaw diagnosed fibromyalgia and depression. (Tr.
230).

A year later, on January 8, 2004, plaintiff returned to Dr.
Hackshaw. Dr. Hackshaw indicated that plaintiff's fibromyalgia
had been greatly improved since the diagnosis of adrenal
insufficiency and taking of prednisone. He noted that most of
plaintiff's muscle aches and pains and burning pain had resolved
since starting the prednisone and plaintiff would be on a
deliberate and slow taper of the prednisone over time. Upon
examination, plaintiff had slight tender points in approximately
eleven of eighteen tender points, but nothing exquisite, and no
jump was elicited. Dr. Hackshaw was pleased with how plaintiff
was doing and told her to maintain her current medications (Tr.
223).

On June 28, 2004, plaintiff presented with abdominal pain to
Dr. Poirier, a family practitioner, but it resolved with

-5-

treatment.  She reported that she discontinued Viokase, which she was taking for pancreatic divisum and had not noticed any change in her condition. (Tr. 337). An MRI of her abdomen were negative. (Tr. 323).

In November 2004, Dr. Hackshaw opined that plaintiff could only occasionally lift up to ten pounds, sit for two hours in an eight-hour day, stand for two hours in an eight-hour day, and walk for one-hour in an eight-hour day.  Again, he believed that she experienced additional functional limitations. (Tr. 352).

IV.  MEDICAL AND VOCATIONAL TESTIMONY

A medical expert, Dr. Nusbaum, reviewed the record and testified at the administrative hearing.  He testified that plaintiff has had pancreas divisum all of her life and has been diagnosed with fibromyalgia. (Tr. 391-92).  There has not been any documented lupus flare. (Tr. 392).  Dr. Nusbaum testified that she did not meet the listings. *Id.*  Dr. Nusbaum further testified that plaintiff would be limited to lifting ten pounds occasionally and five pounds frequently; standing and walking one hour at a time for a total of four hours in an eight-hour day; occasional bending, stooping, and crouching; and avoiding exposure to cold temperatures.  He did not impose any limitation on her ability to sit.  (Tr. 393).  Upon cross-examination by plaintiff's attorney, Dr. Nusbaum reiterated that he believed plaintiff could work eight hours a day, five days a week, within the limitations he described. (Tr. 396).

In addition to a medical expert, a vocational expert, Mr. Klein, also testified at the administrative hearing.  He testified that plaintiff's past job as a retail operations manager was considered light by the DOT, but plaintiff performed that job at the medium exertional level. (Tr. 397).  Mr. Klein was asked whether jobs would exist in the national economy for an individual with the plaintiff's age, education, work experience

-6-

and who could lift ten pounds occasionally and five pounds
frequently; could stand and walk one hour at a time for a total
of four hours in an eight-hour day; who could occasionally bend,
stoop, and crouch; and who had to avoid exposure to cold
temperatures.  The hypothetical claimant was also limited to
sedentary work with no work at unprotected heights, on
scaffolding, or around any kind of heavy equipment, could engange
in only limited climbing, and could not be subjected to strict
deadlines or strict production quotas. (Tr. 398).  Mr. Klein
testified such an individual could perform approximately 70% of
unskilled sedentary work, such as surveillance system monitor,
hand packer, receptionist, and office clerk, which jobs numbered
1,650 in the regional economy and 67,000 in the state economy.
(Tr. 398-99).

V.  THE COMMISSIONER'S DECISION

Based on the above evidence, the Commissioner found that
plaintiff suffered from severe impairments including
fibromyalgia, pancreatic divisum, depression, and lupus.  As a
result of these impairments, plaintiff retained the residual
functional capacity to perform sedentary work with the following
restrictions: no concentrated exposure to air pollutants; no work
at unprotected heights or around dangerous machinery; no exposure
to temperature or humidity extremes; and no high stress, complex
job tasks.  Because the vocational expert identified a number of
jobs that she could perform with those limitations, she was found
not to be disabled.

VI.  PLAINTIFF'S STATEMENT OF ERRORS

In her Statement of Errors, plaintiff raises four issues.
First, she asserts that the Commissioner did not properly
consider the medical opinion of her treating physician. Second,
she asserts that the Commissioner did not properly consider her
subjective complaints of pain, discomfort and functional

-7-

limitations.  Third, she contends that the hypothetical questions
posed to the vocational expert were incomplete and otherwise
improper because they only relied on Dr. Nusbaum's testimony and
did not consider the limitations set out by her treating
specialist, Dr. Hackshaw.  Finally, she asserts that the
vocational expert's testimony cannot be considered substantial
evidence because the testimony of that expert is not consistent
with the <u>Dictionary of Occupational Titles</u> as required by SSR 00-
4p.  The underlying question is whether the Commissioner's
decision is supported by substantial evidence.

VII.  ANALYSIS

<u>Standard of Review</u>.  Under the provisions of 42 U.S.C.
Section 405(g), "[t]he findings of the Secretary as to any
fact, if supported by substantial evidence, shall be
conclusive. . . ."  Substantial evidence is "'such relevant
evidence as a reasonable mind might accept as adequate to
support a conclusion'"  <u>Richardson v. Perales</u>, 402 U.S. 389,
401 (1971) (<u>quoting</u> <u>Consolidated Edison Company v. NLRB</u>, 305
U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"
<em>Id.</em> <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976).
The Secretary's findings of fact must be based upon the record as
a whole.  <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985);
<u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley
v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984).  In
determining whether the Secretary's decision is supported by
substantial evidence, the Court must "'take into account whatever
in the record fairly detracts from its weight.'"  <u>Beavers v.
Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387
(6th Cir. 1978) (<u>quoting</u> <u>Universal Camera Corp. v. NLRB</u>, 340 U.S.
474, 488 (1951)); <u>Wages v. Secretary of Health and Human
Services</u>, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court

would reach contrary conclusions of fact, the Secretary's decision must be affirmed so long as his determination is supported by substantial evidence.  <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

With respect to plaintiff's first statement of error, the primary issue is whether the Commissioner gave adequate deference to the findings of Dr. Hackshaw, one of plaintiff's treating physicians.  The Court of Appeals has commented extensively on both the procedural and substantive obligations of the Commissioner when dealing with the opinion of a treating source. <u>See</u> <u>Rogers v. Commissioner of Social Security</u>, 486 F.3d 234, 242 (6th Cir. 2007).  As that court noted, if a treating physician expresses an opinion that a claimant has conditions which are sufficiently severe to preclude work-related activity, if those opinions are adequately supported, and if there is no medical evidence to the contrary, the opinion will be controlling. On the other hand, when this is not the case, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." <u>Rogers</u>, <i>supra</i>.  For the following reasons, the Court finds the first assignment of error dispositive.

The Commissioner first argues that Dr. Hackshaw's opinion was not entitled to either controlling or significant weight because it is not clear that he qualified as a treating physician.  The Commissioner argues that Dr. Hackshaw saw plaintiff only four times over a a two-year period and that he provided no treatment to her between a visit in January, 2004 and the residual functional capacity evaluation form he completed in

November of 2004.  Because this rationale for rejecting Dr.
Hackshaw's opinion is not contained in the Commissioner's
administrative decision, the Court may not consider it here.  See
Rogers, supra.

In the administrative decision, the Commissioner provided
several reasons for rejecting the restrictions imposed
by Dr. Hackshaw.  They included the inconsistency between his
opinion and the opinions of Dr. Nusbaum, the testifying medical
expert, and Dr. Das, the State agency physician, the fact that
Dr. Hackshaw's opinion appears to have been based upon
plaintiff's subjective complaints, and the fact that plaintiff's
activities of daily living were inconsistent with the conclusion
that she is completely disabled.  In support of this latter
rationale, the Commissioner notes plaintiff is able to care for
her personal needs, do light housework, read, watch television,
occasionally drive a car, go grocery shopping, and visit with
friends and family.  Finally, the Commissioner noted that her
treatment regimen was conservative and that her symptoms have
been improved by medication without the presence of significant
side effects.

Taking the latter two rationales first, the Commissioner
was not entitled to conclude that because plaintiff had improved
by her last visit to Dr. Hackshaw, she was not disabled.  Dr.
Hackshaw noted that improvement but still determined, some months
later, that she could not work a full day.  Unless there are
other reasons for disregarding that opinion, the mere fact that
he noted some improvement in plaintiff's symptoms does not
entitle the Commissioner to substitute his own medical opinion
for that of Dr. Hackshaw in determining the effect of that
improvement.

Additionally, a fair reading of plaintiff's testimony does

not support the conclusion that her activities of daily living are inconsistent with Dr. Hackshaw's opinion concerning her residual functional capacity. She testified that she does have problems sitting for more than an hour at a time. Plaintiff testified that she is able to do her household activities only if she is able to rest as needed. She also testified that when she does housework or other ordinary activities, by the middle of the day she generally feels tired and fatigued and unable to continue. Usually, she then naps for an hour or two. She also testified that she is unable to do sedentary social activities such as going to sporting events or church because of the amount of sitting involved. Taken as a whole, her testimony is entirely consistent with Dr. Hackshaw's conclusion that she cannot perform the necessary amount of standing, sitting, and walking to make it through an eight-hour work day.

The Commissioner may, in an appropriate case, discount the opinion of a treating source if it is not well-supported by proper testing or diagnostic procedures. Here, Dr. Hackshaw appears to have performed the typical diagnostic tests for fibromyalgia, and the Commissioner does not take issue with the basis for his diagnosis of that condition. Thus, the only other basis articulated by the Commissioner for disregarding his opinion is the fact that the non-examining physicians, Drs. Das and Nusbaum, reached a different conclusion as to plaintiff's residual functional capacity. However, it is clear that unless valid reasons are given to prefer the opinions of non-treating sources over those of a treating physician, the Commissioner may not simply choose to give greater weight to the opinions of the non-examining doctors. See, e.g., Walters v. Comm'r of Social Security, 127 F.3d 525 530-31 (6th Cir. 1997).

This is not to say that the Commissioner was required to

grant benefits to plaintiff, however. There may well be other reasons why Dr. Hackshaw's opinion might be given less than controlling weight here. However, those reasons have not been articulated sufficiently to allow the Court to consider them, and errors in articulating an adequate basis for discounting the opinions of treating sources are generally considered to be prejudicial. <u>Wilson, supra</u>. Thus, a remand for further consideration of this issue is required.

Although it is not necessary to reach plaintiff's other assignments of error in light of this disposition, the Court will comment briefly on them. The Court agrees with the Commissioner that not every diagnosis of fibromyalgia leads to a finding of disability. However, the question here is how this particular plaintiff's fibromyalgia actually impacts her ability to perform even sedentary, unskilled jobs. The Commissioner should, in evaluating that issue, give fair weight to the testimony of the medical expert that her condition can reasonably be expected to cause the symptoms she reports, fairly assess the credibility of her testimony and the type of physical activity it supports, and take into account other evidence of record bearing on this issue.

Addressing plaintiff's next contention, the Court does not believe that the Commissioner had to include plaintiff's reported hand tremors in the hypothetical question posed to the vocational expert based on a lack of objective evidence supporting that limitation. With respect to her fourth argument, it would be helpful for the Commissioner to address on remand whether the jobs identified by the vocational expert are, in fact, the ones to which plaintiff refers in her statement of errors, and to explore the alleged inconsistencies between the expert's testimony and the skill and exertional levels attributed to those jobs by the <u>DOT</u>. Having the jobs specifically identified by <u>DOT</u>

-12-

number might well assist in that inquiry.

## VIII. RECOMMENDED DISPOSITION

For the foregoing reasons, it is recommended that the plaintiff's statement of errors be sustained and that this case be remanded to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

## IX. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge

-13-